IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 02-cv-1533-PSF-BNB

JOHN A. DeGRADO,

    Plaintiff,

v.

JEFFERSON PILOT FINANCIAL INSURANCE COMPANY,
a Nebraska corporation,

    Defendant.

---

## ORDER ON PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES

---

    This matter comes before the Court on plaintiff's motion for an award of attorneys' fees, filed May 9, 2005 (Dkt. # 134) ("Plaintiff's Motion"). Defendant filed its opposition to plaintiff's motion on June 2, 2005 ("Defendant's Opposition"). By Order dated June 3, 2005, the Court directed the parties to contact promptly Magistrate Judge Boland to schedule a settlement conference to discuss plaintiff's fee request unless both parties believed that such a settlement conference would not be useful, in which case they were to so certify to this Court in a joint filing within ten days. On June 13, 2005, the parties filed a stipulation stating that a settlement conference would not be useful. On June 14, 2005, the Court granted plaintiff an extension through June 24, 2005, to file a reply brief in support of his request for attorneys' fees. Plaintiff filed his Reply Brief on June 24, 2005 ("Plaintiff's Reply Brief") and Exhibit 2 thereto on June 28, 2005. The Court has determined that a hearing would not materially assist the Court. The matter is ripe for determination.

**BACKGROUND**

By Order entered April 28, 2005 ("Final Order"), the Court found that defendant Jefferson Pilot Financial Insurance Company had violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") in connection with its calculation of benefits due to plaintiff John DeGrado under a long-term disability policy. The Court ordered the defendant to recalculate the benefits being paid to plaintiff and to pay plaintiff going forward in accordance with the Court's Order construing the benefits provisions of the policy.

The Court also directed the parties to endeavor to agree on an amount to be paid as a lump sum back payment for the difference between the amount paid under the calculation as made by defendant in December 2001, and the amount that would have been paid under the revised calculation as directed by the Court's Order, together with interest on the difference at the rate of 8% calculated pursuant to C.R.S. § 5-12-102(1)(b) as monies wrongfully withheld.

On May 16, 2005, the parties filed a joint submission calculating that the lump sum back amount due to plaintiff is $277,768.63 through May 5, 2005, together with interest of $50,251.99 due on the lump sum back amount through May 5, 2005. On May 17, 2005, final judgment was entered in favor of plaintiff in the amount of $328,020.62, plus prejudgment interest from May 5, 2005 through the date of the judgment, plus post-judgment interest at the statutory rate of 3.35%.

**PLAINTIFF'S REQUEST FOR ATTORNEYS FEES**

Plaintiff requests an award of $221,437.42 for attorneys fees' and paralegal fees incurred in this case pursuant to the ERISA provision allowing for an award of attorneys' fees, 29 U.S.C. § 1132(g)(1).  Plaintiff has submitted a brief supporting his request for attorneys' fees, together with affidavits from both sets of counsel who represented him in this case detailing the hours expended and services rendered.  *See* Affidavits of Marilee Langhoff and Thomas Roberts and exhibits thereto.

Defendant opposes the request for attorneys' fees arguing that the Court should exercise its discretion under the ERISA provision and disallow fees to plaintiff, or alternatively should disallow some of the fees as not reasonably related to the litigation based on reasons that are spelled out in detail in Defendant's Opposition and in the several exhibits attached thereto.  Defendant argues that after appropriate reductions the attorneys' fees allowed should be no more than $22,384 (Defendant's Opposition at 22).

**ANALYSIS**

    **A.**    **Plaintiff's Entitlement to Attorneys' Fees**

Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), permits a court to award "a reasonable attorney's fee and costs of action to either party."  This Court takes that provision to mean that a prevailing party may be entitled to fees and costs.  The Court has discretion to award attorneys' fees to the plaintiff in this case as he prevailed on his claim for additional back benefits and future benefits.

The Tenth Circuit has recognized that an award of attorneys' fees under this section is "not to be done as a matter of course."  *Gordon v. U.S. Steel Corp.*

724 F.2d 106, 108 (10th Cir. 1983).  Rather, in making such an award the court should consider the following five factors:

1. The degree of the offending party's culpability or bad faith;
2. The ability of the offending party to satisfy an award;
3. Whether an award would deter others from acting under similar circumstances;
4. Whether the party requesting the fees sought to benefit all participants in the plan or to resolve significant legal questions under ERISA;
5. The relative merits of the parties.

*id.* at 109;  *Deboard v. Sunshine Mining and Refining* Co.. 208 F.3d 1228, 1244 (10th Cir. 2000).  Applying these factors, this Court finds that an award of attorneys' fees against defendant is appropriate in this case.

While this Court does not necessarily conclude that Jefferson Pilot acted in "bad faith" in denying plaintiff's claim for benefits properly calculated under the policy as directed by the Court's Order, it is culpable for the delay in payment of those benefits. In its Final Order the Court found that defendant's interpretation of its policy language was unreasonable (Final Order at 16), that it failed to obtain sufficient information to determine whether or not plaintiff returned to work on a full-time basis (Final Order at 21), that it failed in its fiduciary duty to document the reasons for the determinations it made (Final Order at 23) and that as a result it acted without substantial evidence and in an arbitrary and capricious manner in its determination that plaintiff's claim should be treated as a recurrent claim and part of a prior disability (Final Order at 23).

There is no dispute that Jefferson Pilot is capable of paying the requested award as it does not deny this in its Opposition.

The Court also finds under the fifth factor that plaintiff has the more meritorious position on the ERISA claim as evidenced by this Court's decision.

4

The other factors listed above have no apparent application in this case, as the unusual facts of this case do not lend themselves to deterring others from acting under similar circumstances, and plaintiff did not seek to benefit all participants in the plan nor were significant legal issues involved (other than to the parties themselves).

**B.     Reasonable Attorney's Fees**

As stated above, plaintiff here requests $221,437.42 for attorneys fees' and paralegal fees.[1]  Based on the affidavits submitted by counsel, this amount appears to based solely on the hours expended multiplied by the counsel's hourly rates.  That is, the plaintiff is not seeking an enhancement of this lodestar number based on the results achieved in this litigation or other factors.

Nonetheless, the Court notes that the total amount of back benefits awarded to plaintiff, including prejudgment interest is in excess of $328,000.  In addition, plaintiff is entitled to increased benefits going forward.  While the parties have not advised the Court of the exact amount by which future benefits are increased, plaintiff asserts that the calculation made according to the Court's Order increases his benefits by approximately $72,000 per year.  Defendant does not take issue with this statement, and the amount appears reasonable in light of the stipulated back benefits amount of $221,000 which related to a period of approximately three-plus years.  Plaintiff asserts that the increased future benefits will approach $2 million. Defendant does not take issue with this assertion, although there is no evidence before the Court on which to substantiate such a claim.  In any event, there is no doubt that the judgment in favor of plaintiff will yield a substantial benefit to him, depending in part on how long he lives.

---

[1]  On June 20, 2004 plaintiff filed a separate motion for allowance of additional costs. That motion is addressed in a separate Order issued contemporaneously herewith.

The substantial award achieved by this litigation is a factor that this Court takes into account in making this award of attorneys' fees.

Despite the high degree of success realized by plaintiff's attorneys, this Court finds that the following factors require a reduction from the lodestar amount of fees requested by counsel.

### 1. Fees relating to the administrative process

Plaintiff concedes in his motion that attorney fees incurred before the ERISA lawsuit is filed are generally found not compensable under 29 U.S.C. § 1132(g)(1) (Plaintiff's Motion at 3). For the reasons set forth in *LaSelle v. Public Service Co. of Colorado Severance Pay Plan,* 988 F. Supp. 1348, 1352 (D. Colo. 1997), this Court agrees that Congress did not intend to provide for the recovery of attorneys' fees work performed in connection with the administrative review undertaken by defendant. On the other hand, plaintiff asserts, *LaSelle* provides authority to award fees for time spent on interviews, consultation, preliminary research, and additional tasks related to preparing the matter for litigation. 988 F. Supp. at 1352. Defendant appears to argue that all time expended prior to the filing of the complaint in August 2002 should be excluded from compensation (Defendant's Opposition at 10). This Court agrees that fees should be allowed for some work undertaken prior to filing, provided that the time was necessary to the prosecution of the case but not part of the administrative proceeding.

Here the determination of what may be allowed for prefiling work requires a short review of the chronology of the events leading up to the filing of the lawsuit.

Plaintiff was denied long-term disability by letter dated March 1, 2001 on the ground that his medical records did not support a finding of disability. Shortly thereafter, he apparently retained counsel, Marilee Langhoff, Esq., to represent him

6

in his efforts to have benefits awarded. In July 2001 Ms. Langhoff filed a formal appeal of the March 2001 decision, and in a letter dated December 13, 2001 defendant advised plaintiff that based on his appeal it had reconsidered its prior decision and made a "favorable determination" concerning his disability claim, and has "determined that he is totally disabled and his disability will be considered a recurrent disability . . . ." (AR 999–1000). The letter also stated that the amount of benefits would be calculated as if the recurrent disability was part of a prior disability incurred by plaintiff, and calculated the benefits based on the plaintiff's earnings at the time of the prior disability, rather than his earning at the time the latter disability commenced. It is this calculation of benefits that the plaintiff challenged in his lawsuit which was commenced on August 7, 2002, and which the Court found to be an erroneous application of the policy in its Order of April 28, 2005.

Against this factual background, the Court finds that attorney time expended prior to December 13, 2001 should be excluded from compensation, as work performed prior to that date does not relate to the litigation issues. In addition, the Court finds that work performed between December 13, 2001 and the date of filing of the complaint should be excluded from compensation to the extent it was directed towards an administrative appeal of the December 13, 2001 decision rather than towards litigation.

Defendant contends that plaintiff has requested compensation for 54 hours of attorney time, totaling $11,950.67 in fees, for time spent on administrative proceedings which should not be compensable (Defendant's Opposition at 10). For the convenience of presentation, the defendant has set forth the time it contends to be related to the ERISA administrative process on Exhibit B to its opposition, and time it contends relates to preparation of the complaint on Exhibit C to its opposition. The Court has reviewed both exhibits and notes that the time set forth on Exhibit B totals 54.27 hours, and the

7

time set forth on Exhibit C totals 14.55 hours, or a total of 68.82 hours. The Court is uncertain which 54 hours of this total the defendant urges to be non-compensable.

In any event, the Court will exclude from compensable hours the time spent prior to June 21, 2002 as set forth on Exhibits B and C, as it appears that was the date when work on preparing the lawsuit commenced. The Court thus excludes 51.32 hours, or $11,424.17 in fees, from those set forth on Exhibit B, and 3.70 hours, or $814 in fees, from those set forth on Exhibit C.

2. <u>Fees relating to unsuccessful claims</u>

Defendant argues that plaintiff should not be compensated for claims that were originally filed by plaintiff but were not pursued, or on which plaintiff did not prevail. Plaintiff argues that time spent on non-successful claims is compensable if they are related to successful claims and the outcome is excellent, citing to *Jane L. v. Bangerter*, 61 F.3d 1505, 1511-12 (10th Cir. 1995) (Plaintiff's Reply Brief at 19). Under the circumstances of this case, the Court agrees with the defendant's position.

Plaintiff's complaint filed on August 7, 2002 alleged five claims for relief. The First, Second and Third Claims for Relief alleged claims under ERISA for recovery of benefits, breach of fiduciary duty and declaratory judgment, respectively. The Fourth Claim stated a common law claim for breach of contract and the Fifth Claim for bad faith breach of an insurance contract. Plaintiff requested punitive damages and a jury trial.

In September 2002, defendant moved to dismiss the Fourth and Fifth Claims based on ERISA preemption, and the Second Claim on the grounds that it was duplicative. The motion was extensively briefed. On March 25, 2004, after the Supreme Court denied the petition for writ of certiorari filed from the Tenth Circuit decision in *Kidneigh v. Unum Life Ins. Co. of America,* 345 F.3d 1182, 1185-86

(10th Cir. 2003), *cert. denied*, 540 U.S. 1184 (2004), in which the Tenth Circuit expressly held that bad faith claims under Colorado common law are preempted by ERISA, plaintiff withdrew his Second and Third Claims for Relief in a response brief to defendant's pending motion for summary judgment, filed a confession of the pending motion to dismiss and withdrew his demand for a jury trial on the state law claims (See Notice of Confession of Defendant's Motions, filed March 25, 2004).  All of plaintiff's claims other than the First Claim were therefore dismissed.

                a)       Work on "bad faith" claim

Defendant contends that plaintiff's counsel put forth "substantial effort" on the bad faith claim, and that any fees attributable to such work should be eliminated from the fee request (Defendant's Opposition at 12).  Defendant contends that such work includes all work on the briefing of the motion to dismiss, discovery efforts aimed at proving the bad faith claim, research relating to such claims, as well as all work relating to the retention of plaintiff's tendered expert witness on the issue of bad faith, Professor Garth Allen, and all work relating to the preparation of Professor Allen's expert witness report.  Plaintiff argues that even when an ERISA plaintiff fails to prevail on all claims, courts have "routinely . . . refused to reduce a fee award" citing to cases including *Depenbrock v. CIGNA Corp.*, 2005 WL 636701 (E.D. Pa. May 18, 2005) (Plaintiff's Reply Brief at 20).

The Court here is being requested to award fees pursuant to Section 502(g(1) of ERISA, 11 U.S.C. § 1132(g), which allows an award of fees for claims brought under ERISA.  The statute does not authorize this Court to award fees on non-ERISA claims, even if the requesting party prevailed on such claims.  In *Depenbrock*, all the claims brought by the plaintiff were ERISA claims and the claims on which plaintiff failed to prevail were not state law tort claims as in the instant case.  *See Depenbrock v. CIGNA,*

*Corp.*, 278 F. Supp. 2d 461, 462 (E.D. Pa. 2003), summary judgment for CIGNA reversed and ordered to be entered in favor of Depenbrock at 389 F.3d 78 (3d Cir. 2004). Accordingly, the Court agrees with defendant that a reduction for non-ERISA hours must be made from plaintiff's attorneys' fees application.

Defendant has set forth on Exhibit E to its opposition the hours which it asserts are reflective of work on the bad faith claim (Defendant's Opposition at 14). It asserts that 38 hours of attorney time, billed at a total of $7,386.50, was directly attributable to such work and should be deducted from plaintiff's fee request. The Court has reviewed Exhibit E and agrees that the work reflected on the entries listed on Exhibit E appear to relate primarily, if not solely, to work related to the dismissed bad faith claim. Accordingly those fees will not be allowed.

Defendant, however, also argues that the actual number of hours expended on the bad faith claim was "undoubtedly much higher," stating that the claim was prosecuted as equal to, not adjunct to, the ERISA claim prior to the Tenth Circuit's determination in *Kidneigh* (Defendant's Opposition at 14; emphasis in original). Thus defendant argues that this Court should assume that "roughly half of all work to which no particular claim can be assigned until October 2003" was expended in furtherance of plaintiff's bad faith claim, and therefore one-half of the total fees requested through October 2003 should be disallowed. Defendant does not present these entries on a separate exhibit, but in its opposition states that 50% of the fees through October 2003 totals $45,443.00 (Defendant's Opposition at 21) and this should be deducted from the fee request.

As stated, the Court agrees that fees cannot be awarded for work performed on non-ERISA claims. But defendant's approach requires the Court to make a substantial reduction in the requested fees based on an unsubstantiated assumption. Moreover,

even if certain of the attorneys' work related to attempting to prove the bad faith claim, the same work may also have reasonably related to attempting to prove the ERISA claim, and therefore the work was neither duplicative nor unnecessary. Furthermore, cutting the pre-October 2003 hours and fees allowed by 50% might well constitute "double-cutting" as some of those hours and fees have already been, or are below, deducted for other reasons. Accordingly, except to the extent it is clear that the work performed related only to the bad faith claim, or to another non-ERISA claims, the Court is not inclined to make the assumption suggested by defendant and reduce the fees by the suggested 50 percent, or any other percentage.

### b) *Work on other non-ERISA claims*

Relatedly, defendant argues that some of the hours recorded on counsel's time sheet plainly relate to non-ERISA claims, other than the bad faith claim, which were apparently considered by counsel, but were not filed. Defendant has provided a schedule of such hours on Exhibit F to its opposition. It sets forth that 80.75 hours of time, totaling $14,383 in fees, was expended on non-ERISA claims, such as potential claims under the ADA, RICO, or other unspecified "non-ERISA" claims.

The Court has reviewed Exhibit F, and finds that it presents entries for hours that relate to work that was performed on such non-ERISA claims as described by defendant which should be excluded, but that not all the hours listed on Exhibit F should be excluded. Specifically, the Court finds that all the entries described on Exhibit F are not compensable under ERISA, with the exception of the 3.4 hours recorded on October 4, 2002, 1.6 hours of those recorded on November 12, 2002 and .6 hours of the hours recorded on November 20, 2002, which cannot be specifically identified as non-ERISA work. Subject to theses three entries, the Court finds that 75.15 hours of

work described on Exhibit F, totaling $13,651 in fees, should not be allowed as part of plaintiff's fee request.

      3.    <u>Fees relating to unnecessary or duplicative services</u>.

Defendant argues, and the Court generally agrees, that the plaintiff should not be awarded fees for attorney services rendered if the work was unnecessary to the case, or if the work was performed by more than one attorney in situations where one attorney would suffice. In this case particularly, defendant argues that the services of two experienced lawyers, Ms. Langhoff and Mr. Roberts, were unnecessary and duplicative to the extent that each lawyer attended "virtually every hearing and deposition in this case." (Defendant's Opposition at 16). On Exhibits G through L to its opposition, defendant sets forth this purported duplication of effort by displaying the attorneys' work on scheduling orders and attendance at Scheduling Conferences (Exhibit G), in work on motions to compel (Exhibit H), in work on motions for protective orders and attendance at hearings re same (Exhibit I), in preparation for and attendance at depositions (Exhibit J), in work on pretrial orders (Exhibit K) and attendance at status conferences (Exhibit L). On Exhibit R defendant collects what it claims to be duplicative entries from each of Exhibit G through L, and asserts that the duplicative work of these experienced lawyers amounts to 202.47 hours, representing fees of $51,202. (See Defendant's Opposition at 17; Exhibit R at page 10 of 19). Defendant requests the Court to excludes these hours and fees from plaintiff's request.

      *a)*    *Two attorneys versus none*

The first problem with defendant's argument is that it apparently seeks to exclude the hours of both attorneys who attended the hearing in question, or participated in the challenged work, as opposed to just one of them. For example, on Exhibit H defendant reflects that both Ms. Langhoff and Mr. Rosenberg attended a hearing on a motion to

compel held on April 14, 2003. On Exhibit R, at page 6 of 19, defendant includes both of these time entries as "duplicative work" and seeks exclusion of all the hours billed by both attorneys. But even if both of the attorneys were not necessary to the hearing, at least one of the attorneys was required to be present at the hearing. Thus defendant's methodology is flawed in this respect.

        *b)*      *Two attorneys sometimes but not always equate to duplicative work*

There are many situations where participation by two attorneys is justified, even if one attorney is merely reviewing and checking the work of the other, or is simply available to consult with the attorney. Thus the Court does not accept defendant's suggestion to exclude all the hours presented on Exhibit R at page 10 of 19. Yet some duplicative work has been discovered by the Court and is discounted accordingly.

        *i.*      <u>Depositions</u>

In connection with the hours billed for the preparation for and taking of depositions, the Court does find substantial identifiable and unwarranted duplication of attorneys' time that justifies exclusion from the fee request. The record in this case reflects that plaintiff took depositions of three of defendant's employees, Susan Wharton, Thomas Charest, and Ruth Hagemann, excerpts from each being offered in support of plaintiff's positions in the case. *See* Exhibits 7, 8 and 9 to Plaintiff's Response to Defendant's Motion for Summary Judgment. The depositions were taken in Omaha, Nebraska. Ms. Wharton's deposition was taken on January 14, 2004, Mr. Charest's deposition was taken on January 16, 2004 and Ms. Hagemann's deposition was taken on January 15, 2004. Both Mr. Roberts and Ms. Langhoff were present at all three depositions. The transcripts reflect that Ms. Langhoff took the deposition of Ms. Wharton on January 14, 2004 (*id.*), that Mr. Roberts took the

deposition of Mr. Charest on January 16, 2004 (*id.*), and that apparently both counsel were permitted to question Ms. Hagemann on January 15, 2004. *See* Exhibit E to Defendant's Reply Brief in Support of Motion for Summary Judgment. On November 12, 2004, a supplemental deposition was taken of Ms. Hagemann in Omaha by Ms. Langhoff. *See* Supplemental Designation of Hagemann testimony filed December 3, 2004.

On Exhibit R at pages 7 of 19 through 10 of 19, defendant presents entries of the attorneys' work which it claims to be duplicative in connection with the preparation and taking of the above-referenced depositions. Defendant apparently is seeking to show that both Mr. Roberts and Ms. Langhoff are seeking fees for the time during which they were simultaneously preparing for and attending all three of these depositions. Defendant asserts that the duplicative time amounts to 139.17 hours, or fees totaling $36,335.75. *See* Exhibit R at page 10 of 19.

The Court has carefully reviewed the entries set forth on Exhibit R, and concludes that some, but not all, of the time recorded for the preparation and taking of these depositions is duplicative.

For some reason the plaintiff decided to send two attorneys to Omaha to take the depositions of defendant's claims personnel, each of whom was being deposed on essentially the same subject–the treatment of plaintiff's claim. It seems inherently inefficient to have had two different attorneys reviewing the same claims file and the related documents for the purpose of taking these three depositions rather than having one attorney take all three. However, this is how plaintiff chose to proceed, and to the extent it resulted in duplicative work that should not be compensable out of defendant's pocket.

First, the Court will not allow fees for time spent by one attorney observing the other attorney ask questions at a deposition, or for the travel time of two attorneys when one would have sufficed. Thus the Court will not award fees for the following entries: the 12.50 hours, or $3,750 in fees, billed by Mr. Roberts on January 14, 2004 when Ms. Langhoff took the deposition of Ms. Wharton; the 12 hours, or $2,700 in fees, billed by attorney Langhoff on January 16, 2004, when Mr. Roberts took the deposition of Mr. Charest, and one-half of the combined 23.2 hours, or $6,270 in fees, billed by both attorneys on January 15, 2004, when the deposition of Ms. Hagemann was taken. *See* Exhibit J, page 2 of 3. As to this last item, $3,135 in fees will be disallowed.

In addition, the time billed preparing for these depositions during the period between October 2003 and the date of the depositions exceeded 24 hours for Ms. Langhoff and 22 hours for Mr. Rosenberg. *See* Exhibit R at page 8 of 19. The Court finds this time excessive and duplicative as both counsel were apparently reviewing the same claims file. The Court will disallow one-half of the 46 combined hours, or 23 hours. Using an approximate average hourly rate of $250, this yields an additional deduction of $5,750.

Thus the Court will not allow a total of $15,335 from the fees requested relating to the preparation and taking of depositions

       ii.  <u>Mediation efforts</u>

In addition, the defendant urges that some of the time expended on the mediation efforts should not be allowed as duplicative. Defendant presents the total hours and fees billed by plaintiff's counsel for mediation activities on Exhibit M, reflecting 66.85 hours and $15,713 in fees. On Exhibit R, at pages and 11 and 12 of 19, defendant argues that 46.60 hours out the 66.85 recorded, representing $11,033.50 in fees, should not be compensable.

This Court favors mediation and other alternative methods of litigation resolution, particularly in ERISA cases. This Court indeed favors the creation of a system of administrative courts or mediators to adjudicate or evaluate ERISA claims, at least in the first instance, including perhaps the system by which Social Security disability cases are now handled.

Nonetheless, unlimited and duplicative efforts at mediation are not properly compensable under the ERISA statute, and it appears that compensation for duplicative and unnecessary mediation efforts is being sought here. The Court notes that the vast majority, if not all, of the mediation efforts in this case occurred prior to plaintiff dismissing his bad faith denial of coverage claim in March 2004. It is not surprising that the parties could not settle while those claims were pending, yet it is disturbing to the Court that no apparent mediation was undertaken after those claims were dismissed and this case was pending solely with the remaining ERISA claims. That being the case, the Court is not inclined to award fees for the mediation efforts described on Exhibit M, certainly not in the amount of $15,713 as plaintiff appears to request. The Court will disallow $10,000 of the amounts represented by the hours described on Exhibit M.

### iii.     Claims file

On Exhibit T to it opposition, defendant sets forth numerous entries, apparently primarily billed by a paralegal at the law firm of Mr. Roberts, generally describing her work as organizing and reviewing defendant's claims file. *See* Exhibit T, page 1 of 2. Because the Administrative Record in this case, which is essentially the claims file, was assembled and submitted to the Court by defendant (*see* Exhibit B to Defendant's Reply Brief in Support of Summary Judgment) it does not appear that the work

performed had any usefulness or benefit to the case.  This paralegal time will be disallowed.

Other entries on Exhibit T indicate review of the claims file by attorneys.  The Court does not understand such work to be compensable other than in connection with preparation for the above depositions, or for purposes of preparing the briefs, where it is otherwise recorded, and accordingly this time will be disallowed as either duplicative or unnecessary.  The Court will disallow $8,662 in fees as set forth on Exhibit T.

### iv. *Multiple attorneys and unsupported rates*

Although the Court has declined to make a reduction in the fees requested due to defendant's general argument that compensation is being sought for duplicative work, the Court is concerned by the number of different attorneys billing time on this matter.

It appears that two professionals from Ms. Langhoff's firm billed time on this matter–Ms. Langhoff and another unidentified attorney or paralegal with the initials "ERK."  The Court has no way to identify ERK as there is no information about this person set forth in Ms. Langhoff's affidavit.

It appears that at least three attorneys and two paralegals from Mr. Roberts' firm billed time on this matter for which plaintiff seeks an award of fees.  According to Exhibit 3 to Mr. Roberts' affidavit, Mr. Roberts, Mr. Michael Rosenberg and Ms. Laura Schwartz billed time as attorneys, as did two paralegals identified as Sonya Bury and Nancy Caler.  Mr. Roberts' affidavit, however, provides no description of the role played by Ms. Schwartz, no reasons, if any, why she was involved in this case, and no basis on which this Court could find that the hourly rate of $185.00 billed by her was reasonable. *Cf. LaSelle, supra,* 988 F. Supp at 1351 (plaintiff submitted affidavit in support of claim for reasonable hourly rates).

The Roberts' affidavit provides some information about Mr. Rosenberg (*see* ¶ 10 of Roberts' Affidavit) but provides no reasons why his involvement was necessary, and does not provide any information on which this Court could find that his billed hourly rates from $185 to $210 per hour were reasonable. *Cf.* Exhibit 1 to Roberts' affidavit, a 6-page resume of Mr. Roberts' credentials.

Accordingly the Court is not awarding fees for the work performed by Ms. Schwartz, totaling $3,922 in fees. For the above reasons, the Court would also disallow one-half of the fees requested for Mr. Rosenberg's services, consisting of $14,247 in fees for 73.30 hours of work (Exhibit 3 to Roberts' affidavit). However, by reason of the disallowance of fees for work performed on the bad faith claim or other non-ERISA claims as depicted on Defendant's Exhibits E and F, the Court has already disallowed 32.9 of the total of 73.30 hours billed by Mr. Rosenberg. The Court will thus reduce the fee request by one-half of the remaining hours billed by Mr. Rosenberg, or 20.2 hours. Using an average hourly rate of $195 per hour, this reduction amounts to $3,939.

Similarly, as the Court has no information on which to find reasonable the hourly rate requested for the services of "ERK" as listed in the attachment to Ms. Langhoff's affidavit, the Court will allow no fees for that person's time. Having reviewed the attachments to Ms. Langhoff's affidavit, the Court finds that 82.25 hours of ERK's time are included on the billing statements from the inception of the case through April 14, 2003, which apparently is the last entry attributable to "ERK." However, as is the case with Mr. Rosenberg's hours, 27.1 of the hours billed by "ERK" have already been disallowed by reason of the disallowance of fees for work performed on the bad faith claim or other non-ERISA claims as depicted on Defendant's Exhibits E and F, and 11.4 hours of ERK's hours have already been deducted by the disallowance for the

18

hours described on Exhibit T.  The Court will disallow the remaining 43.75 hours billed by "ERK."   Applying the hourly rate of $120 per hour, this results in a disallowance of $5,250.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS plaintiff's motion for an award of attorneys' fees under Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1) (Dkt. # 134).

The Court finds that plaintiff is entitled to an award based on the billing statements filed as attachments to the affidavits of counsel Marilee Langhoff and Thomas Roberts, subject to the disallowance or deductions set forth above.

The amount awarded as attorneys' fees is $141,053.75.

DATED:   June 29, 2005

BY THE COURT:

s/ Phillip S. Figa
_____
Phillip S. Figa
United States District Judge