IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 02-cv-01533-PSF-BNB

JOHN A. DeGRADO,

      Plaintiff,

v.

JEFFERSON PILOT FINANCIAL INSURANCE COMPANY, a Nebraska corporation,

      Defendant.

---

## ORDER ON PLAINTIFF'S MOTION FOR "DECLARATION OF PROCEDURE AND SCOPE OF REMAND"

---

This matter comes before the Court pursuant to plaintiff's "Motion for Declaration of Procedure and Scope of Remand" ("Plaintiff's Motion") filed March 9, 2007 (Dkt. # 178). On April 5, 2007, defendant filed a response to the motion ("Defendant's Response") (Dkt. # 183). Plaintiff filed his reply on April 30, 2007 ("Plaintiff's Reply") (Dkt. # 186). The matter is ripe for determination.

## I.    PROCEDURAL BACKGROUND

Plaintiff's motion was filed following the decision by the Court of Appeals for the Tenth Circuit issued June 28, 2006, in which the panel reversed in part the determination of this Court on plaintiff's claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and directed this Court to "remand the case to [Defendant] Jefferson for further proceedings consistent with this opinion." *DeGrado v. Jefferson Pilot Financial Ins. Co.*, 451 F.3d 1161, 1176 (10th Cir.

2006).  The mandate of the Tenth Circuit was issued on August 29, 2006.  On September 1, 2006, pursuant to the direction of the Tenth Circuit, this case was remanded by the undersigned judge to Defendant Jefferson Pilot for further proceedings consistent with the opinion of the Tenth Circuit (Dkt. # 167).

The main issue remaining in this case is whether the defendant's determination that plaintiff's second recognized disability, reported to the defendant in November 2000 ("plaintiff's November 2000 disability"), was a "recurrent" disability that should be treated as a "new period of disability" or as "part of the prior disability," as those terms are defined in the disability policy issued by defendant to plaintiff.  According to the policy definitions, plaintiff's November 2000 disability is treated as a new period of disability, "if [he] return[ed] to his . . . regular occupation on a full-time basis for six months or more."  AR 90.[1]  It is treated as a prior disability "if [he] return[ed] to his . . . regular occupation on a full-time basis for less than six months."  *Id*.  In this case, the practical difference between the two different "treatments" of plaintiff's disability is the level of benefits to be paid.

In its Final Order on Review of Administrative Record issued April 27, 2005, *DeGrado v. Jefferson Pilot Financial Insurance Co.*, 367 F. Supp.2d 1315 (D. Colo. 2005), this Court found that the defendant's December 13, 2001 determination that the November 2000 disability would be treated as a part of the prior disability was not

---

[1]  Exhibit B to the defendant's Reply in Support of Its Partial Motion for Summary Judgment, filed April 23, 2004, is treated as the Administrative Record in this case.  It consists of three separate loose leaf notebooks, with the pages Bates-stamped numbers 1 through 1828.  This Court refers to the pages preceded by the designation "AR."

supported by substantial evidence on the record, and therefore that determination was set aside as arbitrary and capricious (*id*. at 1328).  This Court ordered the defendant to pay benefits based on the plaintiff's disability being treated as a "new period of disability" and ultimately entered judgment for a set amount of back benefits and ordered future benefits recalculated.  *Id*. at 1328.

Pursuant to the appeal by the defendant, the Tenth Circuit reviewed this Court's determination *de novo*, limiting its review to the evidence in the administrative record. 451 F.3d at 1169.  The Tenth Circuit thus decided to "take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest."  *Id*. at 1168.

The Tenth Circuit ultimately concluded, as this Court had done, that defendant "failed to demonstrate that its treatment of DeGrado's disability as 'recurrent' was supported by substantial evidence."  *Id*. at 1174-75.  In reaching this conclusion, the Tenth Circuit emphasized that the defendant's December 13, 2001 determination letter "failed to explain precisely how Hagemann reached her conclusion that DeGrado did not work full-time for at least six months following his first period of disability."  *Id*. at 1175.

The Tenth Circuit had found that "if DeGrado worked at least thirty hours per week for six months or more after returning from his first period of disability, then his second claim for disability would be considered 'new' under the terms of the Policy outlined above.  In contrast, if DeGrado failed to work at least thirty hours per week for

six months or more after returning from his first period of disability, then his second claim for disability would be considered 'recurrent.'" 451 F.3d at 1170.  The opinion thus points out that "there was no indication in that letter (or, for that matter, anywhere else in the administrative file) of precisely how many hours per week that Hagemann concluded DeGrado had worked during the time period in question." *Id.*  The Tenth Circuit found, "the letter suggests that Hagemann simply reached a general conclusion that DeGrado could not have, due to his physical symptoms, worked the number of hours reflected in his payroll records." *Id.* at 1175.

The Tenth Circuit, nonetheless, differed with this Court's decision to order the defendant to pay benefits based on the disability being treated as a new period of disability.  It stated that "[h]aving concluded that Jefferson's decision was arbitrary and capricious, our final task is to determine the proper remedy." *Id.* at 1175.  In describing what it found to be the proper remedy the Tenth Circuit concluded its decision as follows:

> In light of the evidence in the administrative record that we have already discussed, it is apparent that the evidence regarding DeGrado's work status during the time between his two periods of disability was conflicting.  In other words, we cannot say that there is no evidence in the record to support Jefferson's decision, or that the evidence so clearly points the other way as to make a remand unnecessary. Rather, the flaw in Jefferson's decision is that it failed to make adequate factual findings regarding DeGrado's work status during the time period in question.  Thus, the proper remedy is to remand the case to Jefferson so that it can make further findings on this issue (Citation omitted).  In doing so, Jefferson is directed to "tak[e] new evidence should [DeGrado] wish to submit the same." *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 32 (1st Cir. 2005).

4

451 F.3d at 1176.  The Tenth Circuit thus remanded the case to this court "with directions to remand the case to Jefferson for further proceedings consistent with this opinion."  *Id.*  As noted above, on September 1, 2006 the undersigned judge remanded the case to defendant "for further proceedings consistent with the opinion of the Tenth Circuit."  (Dkt. # 167).

## II.   PROCEEDINGS AFTER REMAND

Based on the pending motion and briefs filed by the parties, it appears that the following events occurred after the remand order.[2]  On October 18, 2006, plaintiff submitted additional information to defendant consisting of five sworn affidavits from his "physicians, acquaintances and business associates" asserted to have personal knowledge of plaintiff "during the pertinent time period."  Plaintiff's Motion at 3.  On January 19, 2007, plaintiff submitted an affidavit from a Mr. John Tice, described as a former co-employee of plaintiff at Sloan's Lake Management Corporation ("Sloan's Lake"), plaintiff's former place of employment.  *Id.* at 4.

During this time frame, defendant apparently conducted a further investigation into plaintiff's employment, which included contacting other fellow employees of plaintiff, reviewing "adjustment reports" relating to insurance coverage, submitting its claim file to an "independent physician for assessment," interviewing plaintiff, obtaining affidavits and statements from its own employees, and seeking information from the successor disability insurer for Sloan's Lake.  *See* Letter from defendant to plaintiff's

---

[2]   The documents submitted by the plaintiff after the remand, and the other matters considered by the defendant, have not been supplied to the Court, but the parties do not appear to differ on the contents of the materials.

counsel dated January 31, 2007, Exhibit A to Plaintiff's Motion, at 13-17 ("January 31, 2007 letter").

Following its investigation, defendant by its January 31, 2007 letter notified plaintiff through his attorneys that it had "determined that Mr. DeGrado did not return to work on a full time basis for six months or more between the two periods of disability." *Id.* at 27.  In reaching this determination, the defendant, *inter alia*, based its conclusion on an interpretation of the policy that plaintiff "was expected to work at his regular occupation on a full-time basis of 40 hours per week." *Id.* at 20.  Thus, the defendant stood by its determination issued in December 2001 that plaintiff's November 2000 disability was part of a prior disability, for which benefits would be paid at a lower rate.

In addition, defendant advised plaintiff that it had also now discerned that Sloan's Lake terminated disability coverage with defendant on October 31, 2000, and so plaintiff was not covered under the disability on the "new Date of Disability." *Id.* at 28.  Thus, the defendant advised plaintiff, if his November 2000 claim had been a "new claim there would have been no coverage for the claim." *Id.*  But, since the defendant had determined the claim to be recurrent, dating back to his prior disability, he continued to be covered under the policy's recurrent provision, albeit at the lower benefits rate.  *Id.*

The January 31, 2007 letter concludes by advising plaintiff that he may request a review of the denied claim and that such request must be made in writing within 180 days after receipt of the denial notice.  *Id.*

6

III.     **PLAINTIFF'S MOTION AND DEFENDANT'S RESPONSE**

Plaintiff argues that the issuance of the January 31, 2007 letter from defendant, and the conduct of the defendant leading up to the issuance of the letter, were undertaken in "complete disregard" of the Tenth Circuit's decision and the Order of remand issued by this Court (Plaintiff's Motion at 1).  Essentially, plaintiff contends that defendant failed to limit its inquiry and decision to the issue remanded, made findings based on information other than that submitted by plaintiff, and failed to honor the law of the case and the Tenth Circuit's findings.  *Id.* at 2.  As relief, the plaintiff requests this Court to strike Jefferson's 29-page denial letter in its entirety, issue a declaration of the proper scope of Jefferson's review on remand and order defendant to produce its decision, based upon those parameters, within seven days of the date of this Court's order (*Id.* at 21).  More specifically, plaintiff asks that this Court direct Jefferson to: (1) limit its inquiry and decision to the issue remanded; (2) make its findings based on the information contained in the claim file at the time of the appeal and that subsequently submitted by plaintiff; and (3) honor the law of the case and the Tenth Circuit's findings. Plaintiff further requests that this Court enter an Order declaring that it is unnecessary for plaintiff to undertake yet another administrative appeal before this decision maker, and that upon receipt of defendant's revised and limited denial letter, he be permitted to proceed with all "due haste" before this Court.  *Id.*

Defendant responds that its investigation and determination letter are consistent with the Tenth Circuit's decision that it "could make further factual findings regarding [plaintiff's] work status."  Defendant's Response at 3.  Defendant also argues that it did

not disregard the law of the case and that it properly defined the policy language referencing a "return to regular occupation on a full-time basis" to mean working 40 hours per week, despite the statement by the Tenth Circuit quoted above.  Defendant claims that the Tenth Circuit erred and referred to the wrong disability policy when it concluded that 30 hours per week was the policy requirement for full-time work.  *Id.* at 11-19.  Defendant also asserts that plaintiff's attack on the "merits" of its determination are not properly before the Court at this time because plaintiff has presented only a procedural motion.  *Id.* at 10-11.  Finally, defendant contends that granting the relief requested by plaintiff would "orchestrate the remand in such a way that it can only result in a favorable outcome for [plaintiff]."  *Id.* at 2.  Thus, defendant urges the Court to strike plaintiff's motion, require him to refile it limiting his argument to "procedural issues only," and direct him to reserve his arguments concerning the merits of the claim decision set forth in the January 31, 2007 letter.  *Id.* at 33.

IV.   **ANALYSIS**

    For the reasons set forth below, the Court agrees that defendant's January 31, 2007 determination letter, and the procedures undertaken in reaching that determination, exceed the scope of the remand ordered by this Court and conflict with binding determinations made by the Court and the Tenth Circuit.  In reaching this conclusion, the Court recognizes that the procedures to be followed on remand of an ERISA case to an insurer are unchartered, as the statute does not appear to contemplate a remand or discuss any procedures that would be followed if a further review by the claims administrator is ordered by a court.  Nonetheless, in ordering a

8

remand here, the Tenth Circuit decision was explicit in setting forth the scope of the remand.

As set forth above, after stating that "the flaw in Jefferson's decision is that it failed to make adequate factual findings regarding DeGrado's work status during the time period in question" the Tenth Circuit concluded that "the proper remedy is to remand the case to Jefferson so that it can make further findings on this issue." 461 F.3d at 1176.  The procedure to be followed on remand was also set forth: "In doing so, Jefferson is directed to 'tak[e] new evidence should [DeGrado] wish to submit the same.'  *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 32 (1st Cir. 2005)."  *Id.*

It is apparent that the Tenth Circuit did not order or contemplate a new investigation by defendant, nor did it direct the obtaining of additional information, other than that which plaintiff may "wish to submit."  The only issue on which defendant was given leave to make new findings was as to plaintiff's "work status," which to this Court means whether or not he "returned to his regular occupation on a full-time basis for six months" as set forth in the disability policy.  Furthermore, the Tenth Circuit delineated exactly what it found the policy meant by this language, stating:

> [I]f DeGrado worked at least thirty hours per week for six months or more after returning from his first period of disability, then his second claim for disability would be considered "new" under the terms of the Policy outlined above.  In contrast, if DeGrado failed to work at least thirty hours per week for six months or more after returning from his first period of disability, then his second claim for disability would be considered "recurrent."

451 F.3d at 1170.   Accordingly, the task on remand was for the defendant to make a determination, based on the administrative record that existed at the time of its December 13, 2001 decision plus whatever additional evidence plaintiff[3] might submit, as to whether or not plaintiff returned to work after his first period of disability for at least 30 hours per week for six months or more, and make written findings based on the administrative record, plus any new evidence, that support whatever determination is reached.   Since defendant failed to meet this task, the case must again be remanded with directions for defendant to make this determination.   Moreover, in order to avoid further motions to this Court regarding the scope of the remand the following directions are given regarding points raised in the parties' briefs.

The defendant's January 31, 2007 determination letter takes the position that plaintiff's returning to his regular occupation on a full-time basis means that he worked 40 hours per week, whereas the Tenth Circuit plainly interpreted the policy to require that he work 30 hours per week.   Defendant seeks to justify its position by stating that the Tenth Circuit, in reaching this interpretation, "mistakenly considered" a different disability policy that happened to be in the administrative record (Defendant's Response at 12) and the Tenth Circuit erred when it stated "Jefferson [Pilot's] own employees interpreted the phrase 'full time' as meaning thirty hours or mor per week."

---

[3]   As suggested by plaintiff's reply, in using the quotation from the *Buffonge* decision it appears the Tenth Circuit consciously substituted the word "[Degrado]" in place of the words "any party" in reference to the submission of new evidence.   *See* 431 F.3d at 1176.   Thus, the Tenth Circuit was explicit that it was only plaintiff who was to be given the opportunity to submit additional evidence.

461 F.3d at 1170. (Defendant's Response at 18). Neither of these reasons justify departing from the policy interpretation as stated by the Tenth Circuit.

First, if the Tenth Circuit's reference to the language found in the other disability policy was so important in reaching its interpretation of the policy (and this Court does not think that the reference was a substantial factor in reaching that interpretation) defendant should have called the matter to the attention of the Tenth Circuit by way of a petition for reconsideration or rehearing. Having failed to do so, it cannot unilaterally re-interpret the policy after the Tenth Circuit has decided.

Similarly, if the defendant believed the Tenth Circuit erred in its conclusion that the defendant's own employees interpreted the phrase "full-time" to mean thirty hours or more per week, and that such error constituted a significant factor in the decision, it should have filed a petition for rehearing, or appealed the decision. It did neither.

Furthermore, this Court notes that in reaching its interpretation the Tenth Circuit also stated: "there is no indication in the administrative record that, in denying DeGrado's second claim for disability, Jefferson defined 'full time' to mean '40 hours or more per week.'" 461 F.3d 1170. At the time this Court entered its Final Order on Review of the Administrative Record, it also explained why it found no indication in the administrative record that the defendant interpreted full time to mean more than 30 hours per week. 367 F. Supp.2d at 1325. Although the defendant had submitted to this Court an affidavit from Ms. Hagemann explaining why a 40-hour requirement would be applied by her, the affidavit was an after the fact justification of defendant's position, not part of the administrative record as of December 13, 2001. Thus, even if the Tenth

11

Circuit "erred" in its description of the mind set of defendant's employees, there was other justification for the interpretation adopted by the Tenth Circuit.

Accordingly, because the relevant policy does not define "full-time basis" (see AR 90) and the only reference in the policy to the minimum number of hours an employee must work is 30 hours per week as set forth in the Schedule of Benefits (AR 69), defendant's after the fact justification for reading "full time" to mean 40 hours per week in plaintiff's situation must be rejected.  On remand, the defendant is directed to make its determination interpreting the phrase "full-time basis" to mean 30 hours per week or more, as the Tenth Circuit requires.

Plaintiff's motion also points out that in the January 31, 2007 letter defendant takes the position that the policy language referencing returning to work for "six months or more" means "six consecutive months uninterrupted by periods of absence from work due to disability," and the defendant concludes in the letter that "[a]side from the payroll records there is no real evidence that Mr. DeGrado worked full-time for six consecutive months during this time period."  Exhibit A to Plaintiff's Motion, January 31, 2007 letter, at 21, 25.  Plaintiff contends that there is no provision in the policy requiring the insured to return to work for six consecutive months, that the defendant never previously "suggested that the six months must run consecutively" and that such a position is inconsistent with prior deposition testimony given by Ruth Hagemann, the defendant's employee who authored the December 13, 2001 denial letter (Plaintiff's Motion at 13, 15-16).

12

Defendant responds that it only realized after receiving plaintiff's October 2006 submission that he was claiming he returned to work for "six-months of full time days" and therefore in the past it was not called upon to explain the manner by which it determined the six month period (Defendant's Response at 28).  The defendant apparently obtained an affidavit from Ms. Hagemann dated January 2007, in which she states she made a "mistake" when she gave her prior deposition testimony. *See* January 31, 2007 letter at 14.

The Courts notes that in the December 13, 2001 determination letter there is no mention of whether or not the six month period refers to six "consecutive" months (AR 999-1001).  The insurer did not set forth such an interpretation in its determination. Accordingly, when this Court entered its Order on Final Review of the Administrative Record it made no finding, or even a reference, to whether the six month period was interpreted to mean six "consecutive" months.  Similarly, the Tenth Circuit was not called upon to address the issue.  Thus, this Court does not now comment one way or another on the interpretation set forth in the January 31, 2007 letter regarding whether the policy defines the period as six "consecutive" months, nor does it now direct how the defendant is to treat this issue on remand.

The Court does note, however, that the deposition testimony of Ms. Hagemann referenced above was apparently submitted by plaintiff as part of the new evidence to be considered by the defendant on remand.  *See* January 31, 2007 letter at 13. Therefore, Ms. Hagemann's testimony regarding whether or not the policy means

13

a period of six "consecutive" months is evidence that the insurer should consider on remand.  Conversely, given the Court's ruling above that the new evidence to be considered on remand is only the new evidence submitted by plaintiff, the 2007 affidavit submitted by Ms. Hagemann should not be considered on remand.

In addition, in making its determination defendant may not now take the position that the disability policy was terminated as of October 31, 2000, since it did not take that position, or give plaintiff notice of the purported termination, at any time prior to its December 13, 2001 determination.

**CONCLUSION**

For the above stated reasons, the plaintiff's motion (Dkt. # 178) is GRANTED in part to the extent that defendant is directed to: 1) make a new determination, based solely on the administrative record that existed at the time of its December 13, 2001 decision, plus the new evidence submitted by plaintiff prior to January 31, 2007, as to whether or not plaintiff returned to work after his first period of disability for at least 30 hours per week for six months or more; 2) make written findings based on the administrative record that existed at the time of its December 13, 2001 decision, plus the new evidence submitted by plaintiff prior to January 31, 2007 that support whatever determination is reached; and 3) issue the new determination within 40 days of the date of this Order.

If plaintiff desires to appeal the new determination he need not file a request for

further review by the defendant as may be provided for in the disability policy, or as

allowed generally by ERISA, 29 U.S.C. § 1133.

DATED:  October 26, 2007

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge

15