IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Case No. 02-cv-01533-WYD-BNB

JOHN A. DeGRADO,

      Plaintiff,

v.

JEFFERSON PILOT FINANCIAL INSURANCE COMPANY, a Nebraska Corporation

      Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on Plaintiff's Motion and Brief in Support of an Award of Attorney Fees and Costs filed March 9, 2009.  A response was filed to this motion on April 13, 2009, a reply was filed on May 22, 2009, and a surreply was filed on June 12, 2009.  A hearing was held on Plaintiff's motion on Monday, June 22, 2009.

Plaintiff's motion seeks $672,104.38 in attorney fees, paralegal and law clerk fees, and out-of-pocket costs incurred in the matter.  Plaintiff's reply seeks additional attorney fees incurred in preparing the motion to compel discovery and the motion for attorney fees and reply in the amount of $38,097.50 and additional costs  as out-of-pocket expenses under 28 U.S.C. § 1920 as attorney fees.

Plaintiff's Submission Re: Attorneys Fees and Costs Pursuant to Court Order of June 24, 2009 filed July 1, 2009 (Doc. # 305) clarifies that Plaintiff seeks attorney fees

in the amount of $261,527.67 from phase one of the litigation (attorney fees through June 29, 2005, the date of an Order from Judge Figa addressing attorneys fees) and $416,291.50 from phase two of the litigation (fees incurred after June 29, 2005).  The total amount of attorney fees sought is $677,819.17.  Plaintiff also seeks costs from phase one in the amount of $20,534.03 and costs from phase two in the amount of $17,991.89.  The total amount of costs sought is $38,525.92.  Finally, Plaintiff requests post-judgment interest on attorney fees and expenses from the time his fees are included in the final judgment.

For the reasons stated below, Plaintiff's Motion for an Award of Attorney Fees and Costs is granted in part and denied in part.  Plaintiff is awarded attorney fees, but the amount of fees requested by Plaintiff is reduced.  Plaintiff is not awarded any additional costs.  Finally, postjudgment interest is also awarded.

II.   ANALYSIS

A.   Whether an Award of Fees is Appropriate

29 U.S.C. § 1132(g)(1) gives courts discretionary authority to award reasonable attorney's fees and costs in an ERISA action.  It is not to be done as "'a matter of course.'"  *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 108 (10th Cir. 1983).  The Tenth Circuit has indicated that in deciding whether to award fees there are at least five factors to be considered.  *Id.*  These include (1) the degree of the opposing party's bad faith or culpability, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of attorney fees against the opposing party would deter others from acting under similar circumstances, (4) whether the parties requesting fees sought to

benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal issue under ERISA, and (5) the relative merits of the parties positions. *Id*. The court must state the reasons for its ruling. *Id*.

In the case at hand, I find that the first factor is met. While bad faith may not necessarily have been involved, I find that Defendant was culpable in denying the full amount of benefits. As stated in my Order of February 5, 2009, Defendant's decision that Plaintiff's claim was "recurrent" rather than new which operated to deny Plaintiff the increased benefits he sought was arbitrary and capricious. (*Id*. at 51-64.) I found that Defendant's decision ignored the Tenth Circuit's findings that the payroll records supported a conclusion that Plaintiff worked for more than 30 hours per week for more than 6 months and rejected outright all of the evidence that Plaintiff provided which substantiated that he worked 30 hours or more.

Other factors showing culpability include the following. Defendant's benefits decision changed the initial finding that the claim was a new, separate claim (instead of a recurrent claim) without notice to Plaintiff and even though Plaintiff did not appeal that issue. (February 5, 2009 Order at 6-8, 61, 62.) I found that this was also an indication that the decision making may have been biased. (*Id*. at 61.) Further, claim files show that Defendant continued to take the position that the claim was a "new" claim as compared to recurrent until a comparison was made of what the difference in payments would be if the claim were new versus recurrent. (*Id*.) This calculation showed that if the claim were treated as new, Defendant would face a payout of over $2.8 million. If the claim were treated as recurrent, it would only have to pay about $610,000. (*Id*. at 7-

9.)  Also, my Order found that Defendant failed to make specific findings about how many hours that Plaintiff worked per week despite the Tenth Circuit's indication that this should be done.  (*Id.* at 64.)  Finally, the Order found that Jefferson was improperly arguing issues which were decided by the Tenth Circuit and were barred by the mandate rule.  (*Id.* at 33-37.)

As to the remaining factors, it is undisputed that the second factor is met as Defendant can satisfy an award of fees.  I also find that the third factor is satisfied—whether an award of fees against Defendant would deter others from acting under similar circumstances.  I find that an award of fees might well deter Defendant from acting under similar circumstances, particularly when this award is considered with my previous findings that Jefferson's decision was arbitrary and capricious and that there were significant procedural irregularities in the case.  Further, I find that the fifth factor is met:  Plaintiff's position was more meritorious than Defendant's on the ultimate issue, as explained above.  Plaintiff also received a very substantial award.  Finally, I do not believe that the fourth factor is met—whether Plaintiff sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal issue under ERISA.  Defendant's position was unique and I thus do not believe that he benefitted all participants and beneficiaries.

In short, four of the five factors are met and I find that attorney fees should be awarded.  I now turn to the issue of what fees are properly awarded and the amount of the award.

B.      What Fees Should Be Awarded

As discussed previously, Plaintiff seeks $261,527.67 in fees incurred in the first

phase and $416,291.50 in fees incurred in connection with the second phase.  The total

amount of attorney fees sought is $677,819.17.  I address these fees below.

1.      Whether Judge Figa's Order Should Be Adopted Which Addressed
             $221,437.42 in Fees From the First Phase

I first address Judge Figa's Order of June 29, 2005.  His Order addressed fees

incurred in the first phase in the amount of $221,437.42.  While Plaintiff seeks an

additional fees in the amount of $40,090.25 in connection with the first phase of the

litigation ($261,527.67 minus $221,437.42), addressed below, I now discuss whether

Judge Figa's order should be adopted as to the $221,437.42 in fees he addressed.

Judge Figa's Order was vacated after the Tenth Circuit's ruling by Order of

January 31, 2007, although Judge Figa indicated that the Order was subject to being

reinstated in whole or in part upon completion of the remand process.  In his Order,

Judge Figa reduced certain fees up to that date as excessive or unreasonable and ruled

that certain fees related solely to the administrative process and work on non-ERISA

claims that were not filed should be excluded.  I find that Judge Figa's Order as to these

issues is detailed and well reasoned and I see no reason to depart from his rulings in

connection with a reduction of fees on these issues.  Accordingly, I adopt the portion of

his Order that addressed these issues herein.

The one disagreement I have with Judge Figa's Order is his ruling that attorney

fees are not reimbursable in connection with the state law claims which were filed.

Those fees amounted to $7,386.50 for the bad faith claim and $13,651 in fees on other

non-ERISA claims, totaling $21,037.50.  (June 29, 2005 Order at 10-12.)  Having

carefully considered Plaintiff's arguments, I decline to reduce the fees because of

Plaintiff's lack of success on the state law claims.  The Supreme Court has stated that

one of the most significant factors to be considered as to fees is the "results obtained."

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  "This factor is particularly crucial

where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his

claims for relief."  *Id.*  Where the claims involve a common core of facts or are based on

related legal theories, "the district court should focus on the significance of the overall

relief obtained by the plaintiff in relation to hours reasonably expended on the litigation."

*Id.* at 435.  "Where a plaintiff has obtained excellent results, the attorney should receive

a fully compensatory fee, even though he did not prevail on every theory.  *Id.*

The Tenth Circuit "applied *Hensley* to reverse a district court's reduction of

attorney's fees for a plaintiff who prevailed on a part of her Equal Pay Act claim but

failed on her Title VII claims – the facts supporting the plaintiff's unsuccessful claims

were part of 'one bundle of proof' with the successful one, and thus the plaintiff's

attorney was 'entitled to be fully compensated.'"  *Robinson v. City of Edmond*, 160 F.3d

1275, 1283 (10th Cir. 1998) (quoting *Tidwell v. Ford Howard Corp.*, 989 F.2d 406, 412-

13 (10th Cir. 1993)); *see also Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1111-

12 (10th Cir. 1998) (district court did not err in awarding full attorney's fees even though

plaintiff achieved only partial success, winning on a retaliation claim and losing on a

hostile work environment claim, since "the claims were related and dependent on a

common core of facts").  Thus, "when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award."  *Robinson*, 160 F.3d at 1283.  "When a plaintiff achieves most or all of what she aimed for in a civil rights lawsuit, her lawyer should receive 'a fully compensatory fee.'  *Id.* (quoting *Hensley*, 461 U.S. at 435).

In the case at hand, I find that Plaintiff's bad faith claim and other claims asserted early in the case involve a common core of facts with the ERISA claim.  Although Plaintiff ultimately dismissed these claims after a Tenth Circuit case purportedly made clear that these claims were preempted, he achieved an excellent result on the remaining ERISA claim.  Indeed, Plaintiff achieved his principal goal in the case, *i.e.*, a finding that Defendant's benefits decision under ERISA was arbitrary and capricious. As a result, he received a full award of all past and future benefits.  In back benefits, the total award to Plaintiff approximates $520,000, which is increased by prejudgment interest to almost $700,000.  On an annual basis, potential future benefits payable as a result of this litigation approximates $72,000 per year.  Plaintiff is 43 years old and given the likelihood that his disability from pursuing his own occupation will continue through his 65th birthday, potential future benefits could exceed $1.7 million.  This is very substantial relief.  Accordingly, I find that Plaintiff obtained excellent results in this lawsuit, and I find that the fees should not be reduced because he was not successful on the state law claims.

I also reject another portion of Judge Figa's Order based on recent developments.  Specifically, Judge Figa made reductions in the amount of $13,111.00

($3,922 for work performed by Ms. Schwartz, $3,939 for hours billed by Mr. Rosenberg, and $5,250 for hours billed by "ERK") for work of attorneys for which Plaintiff did not provide adequate support of their role in the case or their rates.  (June 29, 2005 Order at 17-19.)  I find that Plaintiff has now rectified the problems as to those fees, and also now award those fees.

In conclusion as to Judge Figa's Order, he reduced the fees requested by Plaintiff's counsel in the amount of $221,437.42 by $80,383.67.  The total amount of fees he awarded was $141,053.75.  Of the $80,383.67 in fees that were reduced, the state law claims amounted to $21,037.50 of that amount and the amount of fees for attorneys that did not provide adequate documentation was $13,111.00.  Those fees are now reinstated and awarded to Plaintiff.  Thus, instead of an award of $141,053.75, Plaintiff is now awarded fees in the amount of $175,202.25 out of the $221,437.42 requested (about a 20% reduction in fees).

2.      The Argument that Plaintiff Should Not Receive Fees Awarded by Judge Figa Because He Was Not a Prevailing Party on Appeal is Rejected

Defendant argues, however, that the Tenth Circuit's reversal of the May 17, 2005 Order on the merits by Judge Figa meant that Plaintiff was no longer a prevailing party. That Order was vacated in total by the Tenth Circuit and Defendant argues that Plaintiff should not receive fees for any of the work incurred in the litigation before Judge Figa.  I disagree.  While that Order was essentially vacated by the Tenth Circuit's reversal and Judge Figa also vacated his award of attorney fees, I find that the work incurred by

Plaintiff's counsel during that time frame ultimately contributed to Plaintiff's ultimate success in this case.

Moreover, while the Tenth Circuit order reversed Judge Figa's decision and disagreed with Judge Figa as to certain findings, it did not rule that Defendant's benefit decision should be upheld.  Instead, the Tenth Circuit ultimately concluded, as did Judge Figa, that Jefferson "failed to demonstrate that its treatment of DeGrado's disability as 'recurrent' was supported by substantial evidence." *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1174-75 (10th Cir. 2006).  It also found that Jefferson's decision was arbitrary and capricious.  *Id*.  The Tenth Circuit disagreed with Judge Figa, however, as to the remedy.[1]  Accordingly, I reject Defendant's argument to disallow fees that were incurred before Judge Figa because Plaintiff was not the prevailing party.  *Hensley*, 461 U.S. at 435.

I also disagree with Defendant's attempt to parse out issues that Plaintiff was unsuccessful on in the Tenth Circuit and have the Court reduce fees in connection with those issues.  Specifically, Defendant argues that Plaintiff should not recover fees incurred in connection with time spent on discovery, briefing and argument on extra-record evidence (at least 320 hours and $75,000 in fees) or other issues which the Tenth Circuit found in favor of Defendant on (such as the reversal of Judge Figa's ruling that the calculation of the monthly benefits for "recurrent" disability claims was

---

[1]  Instead of the remedy of an award of benefits, as done by Judge Figa, it found that the proper remedy was to remand the case to the plan administrator to make further findings on the issue of Plaintiff's work status, as the evidence was conflicting on the issue and Defendant failed to make adequate factual findings.  *Id.* at 1176.

unreasonable).  Again, since Plaintiff prevailed on the core issue of whether

Defendant's findings were arbitrary and capricious, I find that he obtained "excellent

results" and the attorney fees should thus encompass all hours reasonably expended.

*Ramos v. Lamm*, 713 F.2d 546, 556 (10th Cir. 1983).

### 3.   The Additional Fees Sought in the First Phase of the Litigation and the Fees Incurred in the Second Phase of the Litigation

As discussed previously, Plaintiff seeks fees in the amount of $261,527.67 in

fees from the first phase of the litigation.  Deducting the $221,437.42 addressed above,

this leave an additional $40,090.25 in fees incurred in the first phase of the litigation

which must be addressed.  Plaintiff also seeks fees in the amount of $416,291.50

incurred in the second phase of the litigation.  The total of fees sought by Plaintiff and

which were not addressed by Judge Figa is $456,381.75.  I now address those fees.

### a.   Fees Expended on the Appeal

I agree with Defendant that the fees expended in connection with the appeal of

this case to the Tenth Circuit should not be decided by me and thus should not be

awarded to Plaintiff in connection with his motion for fees.  This includes the time

Plaintiff's counsel spent on the appeal that has been decided as well as to time

expended on an opening brief relating to the new appeal which has not yet been filed by

Plaintiff's counsel.  *See Crumpacker v. Kansas Dept. of Human Servs.*, 474 F.3d 747,

755 (10th Cir. 2007) ( "'[a]bsent an explicit [statutory] provision, in order for us to

properly exercise our discretion, an application for appeal-related attorneys' fees must

first be made to our court.'" . . . We, therefore, hold that appeal-related fees, including

those incurred in an interlocutory appeal, must generally be awarded by us").

While the Tenth Circuit also held in *Crumpacker* as to an interlocutory appeal that

the district court may in the first instance determine the amount of fees related to that

appeal at the conclusion of merits proceedings, there was no interlocutory appeal in this

case.  In any event, even if I have discretion to determine the amount of attorney fees to

be awarded as to the appeal in the first instance, I decline to do so.

In conclusion on this issue, Defendant asserts that the time spent on the appeal

amounted to $127,272, which amount was not disputed by Plaintiff's counsel at the

hearing.  Further, Defendant calculated an additional $5,496.00 expended by Plaintiff's

counsel in connection with the new appeal.  Again, that amount was not disputed by

Plaintiff's counsel at the hearing.  Since I have found that those fees are not properly

considered by this Court, I will deduct those amounts from the $456,381.75 in fees

which Plaintiff seeks.  Accordingly, the attorney fees are now reduced to $323,613.75.

b.     The Reasonableness of the Remaining Fees

i.     The Legal Framework

"The most useful starting point for determining the amount of a reasonable fee is

the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate."  *Hensley*, 461 U.S. at 433.  "This calculation provides an objective basis on

which to make an initial estimate of the value of a lawyer's services."  *Id.*  In other

words, "[t]o determine the reasonableness of a fee request, a court must begin by

calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the

presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson*, 160 F.3d at 1281) (quotations omitted). "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Id.* (quotation omitted).

"A district court should approach this reasonableness inquiry 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients. . . .'" *Id.* (quoting *Ramos*, 713 F.2d at 555). "However, '[t]he record ought to assure [the circuit court] that the district court did not eyeball the fee request and cut it down by an arbitrary percentage.'" *Id.* (quotation and internal quotation marks omitted).

The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). "A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id.*; *see also Robinson*, 160 F.3d at 1281 ("a district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that

reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks'") (quotation omitted).

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (quoting *Ramos,* 713 F.2d at 553). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id.*; *see also Hensley*, 461 U.S. at 434 and 437 (counsel are expected to exercise their "billing judgment", "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). In other words, the district court should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (quotation omitted).

"After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable." *Id.* "The *Ramos* court suggested that among the factors to be considered were (1) whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers. *Roberts*, 160 F.3d at 1281 (quoting *Ramos*, 761 F.2d at 554). "In this

analysis, [the court should] ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id.*

Finally, once the reasonableness of the fee is determined, the court must decide whether there are other factors that require the fee award to be adjusted upward or downward. One of the most significant factors is the "results obtained." *Hensley*, 461 U.S. at 434. "Where a plaintiff has obtained excellent results, the attorney should receive a fully compensatory fee, even though he did not prevail on every theory. *Id.*

In the case at hand, despite the high degree of success realized by plaintiff's attorneys, I find that a further reduction from the lodestar amount of fees requested by counsel is appropriate, as discussed below.

ii.     Analysis of the Fees in this Case

I agree with Defendant that there appears to be a substantial amount of excessive, duplicative and/or unnecessary billing in this case. The Tenth Circuit has declined to require an automatic reduction in hours to adjust for multiple representation, but has advised the district courts to give particular attention to the possibility of duplication. *New Mexico Citizens for Clean Air and Water v. Espanola*, 72 F.3d 830, 835 (10th Cir. 1996). In *Espanola*, the Tenth Circuit found that it may be appropriate to reduce attorney fees for duplication of efforts by attorneys in conferences with each other. *Id.*; *see also DeBoard v. Sunshine Mining and Refining Co.*, 208 F.3d 1228, 1244-45 (10th Cir. 2000) (finding district court did not abuse discretion in reducing fees as excessive and unreasonable when plaintiff employed four attorneys when the case did not warrant that many attorneys and fees were sought for time spent conferring

about the case); *Sinajini v. Bd. of Educ.*, 53 Fed. Appx. 31, 45 (10th Cir. 2002) (reducing fees by 1/3 for "excessive, unnecessary, and duplicative time spent in meetings and conferences").

In this case 17 people billed on the case on behalf of Plaintiff, and a lot of work was performed by two senior level attorneys as well as associates. Further, there appears to be substantial duplication of effort regarding hearings and attorney conferences, and it is often unclear in the billing records what the attorneys were conferring about or how much time was spent in conference versus performing other tasks. One example of duplicative and/or excessive fees relates to the briefing on the summary judgment motions. After devoting nearly 200 hours to briefing the summary judgment issues, Plaintiff then billed nearly 600 hours in his briefing and petition for rehearing to the Circuit Court in 2005 and 2006 regarding Judge Figa's ruling on the summary judgment motion. When the case was reversed, Plaintiff's counsel then expended an additional 400 hours in connection with the post-remand summary judgment briefing.

I also note that Plaintiff's billing records are unclear as to how much time was spent on tasks that were block-billed, and sometimes on how the time spent related to this case or what tasks counsel was actually working on at the time. This makes it especially difficult to determine the exact amount of duplicative, unnecessary or excessive fees. Further, I find that some of the work billed by counsel also appears clerical in nature and/or may be billed excessively due to inexperience of counsel or for getting up to speed on the case. That type of work is also not be subject to an award.

*See Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1258 (10th Cir. 2005) (reductions may be made for "time spent bringing attorneys up to date about the case they begin work on the file for the first time"); *Espanola*, 72 F.3d at 835 (""[w]hen a lawyer spends time on tasks that are easily delegable to non-professional assistance'", attorney fees are not proper) (quotation omitted); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202-05 (10th Cir.1986) (reduction in fees appropriate due to inexperience of an attorney which led to over-billing).

I also agree with Judge Figa in his June 2005 Order that time spent on the administrative record before the case was filed that was not necessary for the prosecution of the case should also be excluded. (Order of June 29, 2005, at 6-7.) Accordingly, some of the time spent on the administrative record post-remand from the Tenth Circuit is probably also excludable.

On the other hand, considering other *Ramos* factors, it appears that a large majority of the tasks being billed by Plaintiff's counsel would normally be billed to a paying client. Further, I tend to agree with Plaintiff that while Defendant characterized this as a simple straightforward case, I think the case was actually rather complex. Indeed, due to the length of the case and the voluminous record, a 68-page order was drafted by the Court to address the issues.

I also tend to agree with Plaintiff that some of the time expended by his counsel was due to the maneuvering of the Defendant. This was a vigorously contested case which is over seven (7) years old. In the second round of summary judgment motions, Defendant filed its own extensive motion which required substantial briefing on the part

of Plaintiff.  As to the two law firms being involved (the firms of Ms. Langhoff and

Mr. Roberts), Ms. Langhoff stated in her affidavit that she brought Mr. Roberts and his

firm in to assist her because they had more experience in ERISA cases than her.  This

seems reasonable.  *See Alpine v. Hubbell*, No. 05-cv-00026-EWN-PAC, 2007 WL

4224219, at *2 (D. Colo. 2007) ("'there is nothing inherently unreasonable about a client

having multiple attorneys'") (quotation omitted); *Williamsburg Fair Housing Comm. v.*

*Ross-Rodney Housing Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984) ("[m]ultiple

attorneys may be essential for planning strategy, eliciting testimony or evaluating facts

or law").

Another factor that I find particularly relevant in connection with my analysis is

the fact that Plaintiff's counsel did not seek to be compensated at today's rates but

requested that they be compensated at the rates applicable when they performed the

work.  This significantly impacts the amount of fees requested.  As the Tenth Circuit

explained in *Ramos*:

> The hourly rates at which compensation is awarded should reflect rates in
> effect at the time the fee is being authorized by the court, rather than
> those in effect at the time the services were performed.  The lawyers
> asking the fees usually will not have been paid for their services until the
> court makes its allowance.  We think that awarding compensation at
> current rates will roughly approximate periodic compensation adjusted for
> inflation and interest and will obviate the necessity of guessing when periodic
> billings would have been made. . . .

*Id.* at 555.  Here, the fees would obviously be much higher if Plaintiff's counsel were

seeking an award of rates at today's rates.  Finally, as stated previously, I find that

Plaintiff achieved an excellent result on the merits, prevailing on the key issue in this

case, *i.e.*, whether the benefits decision was arbitrary and capricious, and receiving

benefits which could approach or even exceed $2,000,000.00.

After considering all of the above, I note that Defendant's response and surreply

essentially asked the Court to evaluate almost every task and determine how much time

should be deducted.  However, the Tenth Circuit has stated that "[a] general reduction

of hours claimed in order to achieve what the court determines to be a reasonable

number is not an erroneous method, so long as there is sufficient reason for its use."

*Mares*, 801 F.2d at 1203.  For example, it noted that the Supreme Court in *Hensley*

found a one-third reduction of an attorney's hours to be proper "to account for his

inexperience and failure to keep contemporaneous time records."  *Id.* (citing *Hensley*,

461 U.S. at 438 n. 13).  *Mares* further noted that in *Pennsylvania v. Delaware Valley*

*Citizens' Council for Clean Air*, 478 U.S. 546 (1986), the Supreme Court expressed no

disagreement with general reductions by the district court of 48% and 33 1/3% in time

claimed by various counsel for "unnecessary, unreasonable or unproductive" time.  *Id.*

The Tenth Circuit in *Mares* further stated:

> In *Ramos* we likened the process to a senior partner in a private firm
> scrutinizing and adjusting time reported by subordinates. 713 F.2d at 555.
> As anyone who has been in private practice well knows, for billing
> purposes such adjustments can take many forms, including a general
> write-down of total hours logged. In sum, the district court did not err by
> refusing to isolate and analyze every hour assigned to different tasks by
> Mr. Lopez and then prescribe task hours which were acceptable.

*Id.* at 1203 (reducing fees by 77%); *see also Case*, 157 F.3d at 1250 ("Because

mandating that the district court identify hours reasonably expended by billing entry or

litigation activity would, in many cases, be practically impossible, '[t]here is no

requirement ... that district courts identify and justify each disallowed hour. Nor is their

any requirement that district courts announce what hours are permitted for each legal

task.'. . . In fact, in cases such as this one, in which the parties generated thousands of

pages of written work product and the appellants submitted well over a hundred pages

in billing statements with several entries per page, '[i]t is neither practical nor desirable

to expect the trial court judge to have reviewed each paper in th[e] massive case file to

decide, for example, whether a particular motion could have been done in 9.6 hours

instead of 14.3 hours. . . . Instead, '[a] general reduction of hours claimed in order to

achieve what the court determines to be a reasonable number is not an erroneous

method. . . .'") (quotations omitted); *Carter v. Sedgwick County*, 36 F.3d 952, 956 (10th

Cir. 1994) (upholding trial court's decision to reduce each attorney's time by half, finding

that billing records contained unnecessary entries and duplication of services).

     I find that this is a case where it would be virtually impossible for me to review all

the papers in this massive case file to parse out how much time expended on certain

tasks was duplicative or excessive and should not be awarded.  Plaintiff's counsel

submitted extensive billing records with multiple entries per page, many of which are

block-billed.  As discussed previously, this makes it virtually impossible to determine

how much time was devoted to each of the tasks that are the subject of block billing.

Further, Defendant submitted over a 400 page exhibit attached to the response

attempting to detail the nature and amount of the duplicative, unnecessary and/or

excessive fees.  However, again, many of the billable entries that Defendant relies on in

connection with its argument to reduce the fees are unclear as to whether the entries (in

whole or in part) actually relate to the task that Defendant say they do.  Based on the foregoing, I find that a general reduction of hours is appropriate.  Indeed, Defendant conceded that this approach was appropriate at the hearing, and Plaintiff also requested such an approach.  Based on my detailed review of the file and consideration of all the relevant factor, I find that a reduction of 25% of the remaining fees in the first phase of the litigation and the fees in the second phase of the litigation is appropriate.  This results in a reduction of fees from $323,613.75 to $242,710.31.  When the $175,202.25 is added in from the first phase, Plaintiff is receiving a total award of $417,912.56.

 C. <u>Whether the Hourly Rates are Reasonable</u>

 Defendant does not contest any of the hourly fees except those of Mr. Roberts, who charged from $250.00 to $400.00 over the years.  The hourly rates of the other attorneys and staff appear to be reasonable and will not be reduced.

 As to Mr. Roberts, while I agree that his current $400.00 rate per hour seems somewhat high for the Denver area, *see Casey v. Williams Production RMT Co.*, 599 F. Supp. 2d 1253, 1256 (D. Colo. 2009) ("an hourly rate of $400.00 appears unreasonably steep for the Denver market . . . the hourly rate for experienced personal injury litigators in the Denver market is more like $350 per hour"), I decline to reduce his fees.  Mr. Roberts is an experienced litigator with over 35 years of legal experience.  While his rates may generally be high for this area, the Colorado Bar Association ["CBA"] 2008 Economic Survey (relied on by Defendant) reported a $500 average by ERISA practitioners.  (Ex. A to Jefferson Pilot's Resp. in Opp'n to Pl.'s Req. for Attorneys' Fees, Attach. 1).  The cases cited by Defendant for lower rates are not

ERISA cases.  While Defendant's expert quarrels with the current hourly rate charged by Mr. Roberts, Defendant was the one to submit the CBA 2008 Economic Survey which supports that rate in the context of ERISA.  Further, as Plaintiff has argued, some courts have held that ERISA cases "involve a national standard", *see Torgeson v. Unum Life Ins. Co. of Am.*, No. CO5-3052-MWB, 2007 WL 433540, at *6 (N.D. Iowa 2007) ("the state itself may not be a boundary to the determination of a reasonable hourly rate") and courts from other jurisdictions have determined that a rate of over $400 was reasonable for a senior partner in an ERISA case.

Finally and most significant, Plaintiff properly notes that Mr. Roberts could have sought to recover at current hourly rates for all the work he performed over the years, as discussed above.  *Ramos*, 713 F.2d 545, 555 (10th Cir. 1983).  The fact that he did not do so significantly mitigates the high hourly rate Mr. Roberts charges currently.

D.    Costs

Plaintiff has requested out-of-pocket expenses which not awardable as costs as attorney fees.  Plaintiff requests costs from the first phase of the litigation in the amount of $20,534.03.  Plaintiff requests costs from the second phase in the amount of $17,991.89.

The Tenth Circuit has indicated that Items that are normally itemized and billed in addition to the hourly rate may be included in fee allowances if reasonable in amount. *Ramos*, 713 F.2d 546, 559 (10th Cir. 1983).  This is distinct from the costs that are awarded to the prevailing party under 28 U.S.C. § 1920.  This can include such things as an attorney's travel expenses if there is a finding that such costs would normally be

billed to a private client.  *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990).  This can also include long distance charges, copying costs and related expenses if they are usually charged separately in the area.  *Ramos*, 713 F.2d at 559.  Computer research may also be compensable as attorneys fees as "'a substitute for an attorney's time. . .'"  *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1180 n. 10 (10th Cir. 2005).

>    1.    Costs Incurred in the First Phase of the Trial

I disallow any costs that Plaintiff seeks in connection with the first phase of the trial (prior to Judge Figa's Order of June 29, 2005).  I note that Plaintiff received costs taxed by the Clerk of Court in the amount of $3249.46.  (Doc. # 140.)  Plaintiff then sought additional costs from Judge Figa.  (Doc. # 152.)  Judge Figa denied those costs as untimely pursuant to an Order of June 29, 2005 (Doc. # 156) because Plaintiff did not file his request for review of the Bill of Costs within the applicable deadline.  I affirm that Order, and decline to award any costs sought by Plaintiff in the original Bill of Costs awarded by the Clerk of Court in May 2005.

Plaintiff also seeks additional costs incurred in connection with the first phase of the litigation.  According to Plaintiff's Motion for Additional Costs (Doc. # 152 at 1), Plaintiff sought only $8,553.44 in his Bill of Costs in the first phase of litigation.  He now seeks costs from the first phase in the amount of $20,534.03, a difference of $11,980.59.  I have found no explanation for this discrepancy.  It appears that the majority of the new costs sought were incurred prior to the entry of the Bill of Costs and should have been included in that Bill.  After the Bill of Costs, it is difficult to ascertain what costs related to submissions before Judge Figa regarding attorney fees and costs

and which portions were attributable to work on the appeal.  Plaintiff's documentation does not allow me to determine what the costs related to or whether the costs were necessarily obtained for use in the case.  Finally, some of the costs related to Plaintiff's expert Patricia Pacey and I find that such costs are not properly awarded.  Accordingly, I decline to award any additional costs to Plaintiff in connection with the first phase of the litigation.

2.   Costs Incurred in the Second Phase of the Trial

Plaintiff seeks costs of $17,991.89 incurred in the second phase of the trial.  I first note that Plaintiff submitted a proposed Bill of Costs in connection with the second phase of the litigation in the amount of $23,517.59.  The Clerk of Court awarded costs in the amount of 3,270.82.  These included costs for service of the summons and complaint, exemplification and copies, printing costs, and costs incident to taking of deposition.  I awarded additional copy costs and costs incident to taking of depositions in my Order of May 1, 2009, on the parties' request for a review of the Bill of Costs, and also excluded certain costs awarded by the Clerk.

Since costs for service of the summons and complaint, exemplification and copies, printing costs, and costs incident to taking of deposition costs have already been addressed by me in connection with the review of the Clerk's taxing of costs, I decline to award any additional costs in connection with these categories of costs. Further, as noted in my May 1, 2009 Order, Plaintiff did not show that the copies and other costs discussed above were necessarily obtained for use in the case.  I also

decline to award any costs expended in connection with the appeal since those costs should be awarded by the Tenth Circuit.

As to long distance telephone and fax charges, courier services, overnight delivery services and postage, docket fees, transcripts and other miscellaneous fees, I agree with Defendant that Plaintiff did not provide documentation which allows me to determine the nature of the costs being charged or whether these charges were reasonably incurred in the prosecution of this case.  Many of the billing entries are just generic statements with no indication of who is being called, what is being faxed, what is being delivered or even where it is being delivered, *e.g.* "10/08/2002–Velocity Couriers: Delivery."  (2009 Bill of Costs, Ex. 12, p. 1.)  Further, when more information is provided it suggests certain charges are inappropriate, *e.g.,* a $9.65 "fuel surcharge" identified at the bottom of at least 12 entries for delivery charges, the majority of which are completely unrelated to this case, or "11/28/2005 – Velocity Couriers: Delivery to Colorado Court of Appeals." *Id.* pp. 4, 7. This case has never involved submissions to Colorado state courts.  Further, Plaintiff has not shown how long-distance communications were necessary to this case, as both Plaintiff and Defendant are represented by Colorado counsel.  Further, I decline to award costs for rush deliveries. *See Directv, Inc. v. Turner*, No. 03-2287-CM, 2007 WL 38388, at *5 (denying additional costs as attorney fees because the plaintiff did not give the court any way to measure whether they were reasonable).

As to Westlaw legal research charges, I also decline to award such costs.  I find that Plaintiff has not shown that such legal research is normally billed to a client, as

required for an award of such costs.  I also find that Plaintiff did not adequately show

how the legal research was necessary to the case.  *See Vialpando v. Johanns*, No. 05-

cv-01904-MSK, BNB, 2008 WL 410369, at *20 (D. Colo. 2008) (online legal research

expenses were not reimbursable, as the affidavits supporting the fee requests did not

indicate that the bills reflect work performed specifically for this case and did not

describe the manner in which plaintiff's counsel accounted for such costs or that such

charges are normally billed to the client).

Finally, I also decline to award expert witness fees, finding that such fees are not

recoverable under ERISA.  Expert fees may be reimbursable as attorney's fees under

certain statutes, not as costs under 28 U.S.C. § 1920.  *See* 42 U.S.C. § 1988(c) ("In

awarding an attorney's fee under subsection (b) of this section . . ., the court, in its

discretion, may include expert fees as part of the attorney's fee"); 42 U.S.C. § 2000e-

5(k) ("In any action or proceeding under this subchapter the court, in its discretion, may

allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part

of the costs").  However, the Tenth Circuit has held that there is not a statutory provision

in the ERISA statutory scheme which allows expert fees to be awarded, and that an

award of fees on an ERISA claim must be based on U.S.C. §§ 1821 and 1920.  *Holland*

*v. Valhi Inc.*, 22 F.3d 968, 979-80 (10th Cir. 1994) (citing *Crawford Fitting Co. v. J.T.*

*Gibbons, Inc.*, 482 U.S. 437, 439 (1987) ("absent contract or explicit statutory authority

to the contrary," a federal court may not shift expert witness fees, except in the amount

allowed by 28 U.S.C. § 1821(b)"); *see also Agredano v. Mutual of Omaha Cos.*, 75 F.3d

541, 542 (9th Cir. 1996).  Section 1821 limits fees tho $40.00 a day for witnesses for

attendance fees.   Here, the experts tendered by Plaintiff did not testify and are thus not entitled to an attendance fee.

Based on the foregoing, I decline to award any additional costs to Plaintiff in connection with either the first or the second phases of the litigation.

E.     Post-Judgment Interest

According to the Tenth Circuit, postjudgment interest on an attorney fees award is a question of federal law controlled by 28 U.S.C. § 1961.  *MidAmerica Federal Sav. & Loan Ass'n v. Shearson*, 962 F.2d 1470, 1475 (10th Cir. 1992).  That statute provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1 - year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."   . .'"

28 U.S.C. § 1961(a)).  The date of judgment refers to "the date the fees were meaningfully ascertained and included in a final, appealable judgment."  *Shearson*, 962 F.2d at 1476.

Thus, I find that Plaintiff is entitled to an award of postjudgment interest at the applicable rate proscribed by 28 U.S.C. § 1961 (.48% per the Clerk's office) from the date the attorneys' fee award is included in the judgment.

III.    CONCLUSION

For the reasons stated in this Order and on the record at the hearing on June 22, 2009, it is

ORDERED that Plaintiff's Motion for an Award of Attorney Fees and Costs [doc. # 249] filed March 9, 2009, is **GRANTED IN PART AND DENIED IN PART.**  Plaintiff is

awarded attorney fees in the amount of $417,912.56.  Plaintiff is not awarded any

additional costs.  Plaintiff is also awarded post-judgment interest on attorney fees

awarded by the Court from the date the attorneys' fees award is included in the

judgment.

      Dated:  July 6, 2009

                        BY THE COURT:


                        s/ Wiley Y. Daniel
                        Wiley Y. Daniel
                        Chief United States District Judge